### COLE v. CORDLEY et al.

(Circuit Court of Appeals, Second Circuit. January 12, 1909.)

No. 121.

PATENTS (§ 328*)—INFRINGEMENT—WATER COOLER.
　　The Cole reissue patent, No. 12,352 (original No. 745,571), for an improvement in water-cooler equipments, construed, and *held* not infringed.
　　[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

The Circuit Court dismissed the bill in an action based on reissued letters patent No. 12,352, dated May 30, 1905, for an improvement in

---

**water-cooler** equipments. The Circuit Court found that the claims in controversy were not infringed.

Leslie R. Palmer (Philip C. Dyrenforth, of counsel), for appellant.
Harold S. Mackaye (A. P. Greeley, of counsel), for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The patent in controversy No. 12,352 (original No. 745,571) was reissued May 30, 1905, to James T. Cole for an improvement in water-cooler equipments. The specification relates to that class of coolers in which a large glass bottle containing pure, potable water is inverted upon a receptacle containing ice, which surrounds a conduit for the water located in the receptacle. In this way the water is kept cool and may be drawn off by a faucet, in which the conduit terminates, at the bottom of the receptacle. In short, the water after being cooled is delivered to the drinker direct from the bottle through an air-tight passage which prevents contamination from an exterior source. The claims involved are as follows:

"1. In combination with a water-cooler, a support for a water-holder in inverted ·position, comprising a neck having closed communication in the cooler-tank with a conduit therein and a seat about the outer end of said neck, and a water-holder in inverted position on said support with its neck within the neck of the support and its shoulder engaging said seat.

"2. In combination with a water-cooler, a support for a water-holder, in inverted position, comprising a neck having closed communication in the cooler-tank with a conduit therein and an expanded rim about the outer end of said neck, and a water-holder in inverted position on said support, with its neck within the neck of the support.

"3. In combination with a water-cooler, a support for a water-holder in inverted position, comprising a neck communicating with a pipe-coil in the cooler-tank and an expanded rim about the outer end of said neck, and a water-holder in inverted position on said support with its neck within the neck of the support and its shoulder seating upon the rim thereof."

Claim 3 was the first claim of the original. No criticism is made of the patent in suit as a reissue. In other words, it is not now contended that the patent was improperly reissued or that any adverse rights intervened.

Prior to the argument the appellees moved to dismiss the appeal on the ground that the appellant has, since the trial in the Circuit Court, taken a license under two patents granted to Isaiah Newell for improvements in water-coolers. It was conceded at the argument that the application for the earlier Newell patent No. 895,781 was prior to the invention of the Cole patent in suit. In the brief filed in opposition to the motion to dismiss the appeal, counsel for appellant states the situation as follows:

"Newell has two presumably valid patents, one of which dominates the Cole reissue and the other does not. Cole on the other hand, has a presumably valid patent for a certain species of the genus covered by the Newell patent No. 895,781. It is a species which does not appear in the Newell patent."

It was also conceded by counsel for appellant that the earlier Newell patent might be considered as if introduced in evidence and that the statements in the specification might be considered by the court as de-

scriptive of Newell's prior invention. The discussion is thus simplified and confined within narrow limits, making it unnecessary to examine the prior art in detail, as Cole's contribution is now admitted to be confined to specific improvements upon Newell's fundamental invention.

Newell says in his specification:

"By the use of my invention, the users of mineral and distilled waters, are enabled to use the water directly from the original package, and thus absolutely prevent any contamination of the water by coming in contact with the ice, or becoming contaminated by disease germs in any manner whatsoever, which insures the user that he is receiving the mineral or distilled water in its original pure condition, and at a proper cool temperature for pleasant drinking. * * * By means of a cooler of this form, less ice is required, and as before stated, contamination of the pure water absolutely prevented. There are no valves or siphon action in this device, and it is so simple that any one can use or operate it, and it enables the user to obtain water from the original package, which is an absolute assurance of obtaining the water in its original condition."

It is quite evident, therefore, that Cole, being a mere improver, is not entitled to a broad construction of his claims, and, if entitled to invoke the doctrine of equivalents at all, they must be confined within narrow limits. So far as we are able to ascertain from an examination of the Newell patent the only improvement made by Cole which has any substantial value is the air-tight passage from the water in the bottle to the faucet. In the Newell construction it appears that the receptacle, 12, does not have an air-tight connection with the top of the body portion and that air from the ice chest may reach the small surface of water exposed in the receptacle.

It would seem that the danger of contamination from this source was rather apparent than real and that the moment it arose the remedy would immediately suggest itself. If a tight connection were needed at the point indicated it could be made in many different ways and this would seem to be the work of the mechanic rather than the inventor. For instance, the drawings of the Cole patent show a vent-tube, i, which apparently permits the outside air to reach the surface of the water in the holder support, to a limited extent. Should it be found that such contact produced injurious results it could hardly be maintained that he who plugged the vent rose to the dignity of an inventor. Indeed, the Cole specification expressly states that the vent-tube "may be provided with a vent-cock to exclude dust and the like."

The same problem presents itself in each instance and in neither is it necessary to call into being the "intuitive faculty of the mind." However, we are not wholly in accord on the proposition that the Cole patent shows no patentable novelty over the Newell construction. Assuming that it does show this, do the appellees infringe?

The first claim contains, in combination with a water-cooler, the following elements: (1) A support for a water-holder in inverted position, comprising a neck having closed communication in the cooler-tank with a conduit therein. (2) A seat about the outer end of said neck. (3) A water-holder in inverted position on said support with its neck within the neck of the support and its shoulder engaging said seat. The second claim substitutes "an expanded rim" for the "seat"

of the second element, as above stated and omits the limitation of the third element—"and its shoulder engaging said seat." In the third claim the neck of the first element is described as "communicating with a pipe-coil in the cooler tank" and the claim restores the limitation of the third element of the first claim—"and its shoulder seating upon the rim thereof."

In order to infringe these claims, therefore, a cooler must have an inverted water-holder held in position by a support comprising a neck, an expanded rim, and a seat about the outer end of said neck or rim. In order to infringe the first and third claims the shoulder of the water-holder must engage the seat, or rest upon the expanded rim. The ice tank of appellees' cooler when in operation is completely closed. In this tank is fixed a cylindrical vessel of unvarying inside diameter from top to bottom. In the exhibit shown at the argument it resembles a wide mouthed earthen jar. The diameter of the jar being approximately one-half that of the water-holder, the inner upper edge which extends above the tank furnishes a suitable seat or support for the shoulder of the water-holder or bottle. Above the tank, the outer surface of the jar is given an outward flare to admit of a groove being formed on the inner upper edge in which is seated a gasket which gives additional stability to the seat. The jar rests on the bottom of the tank and is connected with a faucet on the outside of the tank at the bottom: there being closed communication between the inside of the jar and the faucet on the outside of the tank. The construction may be rudely illustrated by inverting an ordinary glass bottle so that its shoulder rests on the rim of a tumbler.

It is unnecessary to determine whether, in view of the prior art, the patentee could have made his claims broader, it is enough that he has not done so and we are not permitted to rewrite them. We must take them as they are. The Cole invention centers entirely about the funnel-shaped flaring-rimmed support, C. This the appellees do not have. Their support has nothing in common with the support of the patent except that it holds the inverted bottle in position by engaging its shoulder. They do not have the neck, as shown and described in the patent, and it necessarily follows that they do not have a seat or expanded rim about the outer end of said neck. As before stated the shoulder of their bottle rests on a gasket, of rubber or other suitable material, recessed in the inner rim of the jar. The neck, the seat and the expanded rim are all absent in the appellees' structure. The closed communication with the conduit is present but the communication to the conduit and the cooler-tank belong to entirely different types of construction.

The decree is affirmed with costs. It seems hardly necessary to add that the motion to dismiss the appeal is denied.