PERFECTION COOLER CO. v. CORDLEY et al.

(District Court, D. Massachusetts. August 19, 1912.)

No. 83.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WATER-COOLER.

The Newell patents, No. 895,781, for a water-cooler, and No. 895,782, for an improvement thereon, are meritorious, and represent an advance in the art, in that they cover a new type of water-cooler, disclosing patentable novelty and invention; also held infringed.

In Equity. Suit by the Perfection Cooler Company against Henry G. Cordley and others. On final hearing. Decree for complainant.

A. S. Pattison, of Washington, D. C., James A. Tirrell, of Boston, Mass., and Livingston Gifford, of New York City, for complainant.

Ellis Spear, Jr., of Boston, Mass., and A. P. Greeley, of Washington, D. C., for defendants.

COLT, Circuit Judge. This is a suit for infringement of two patents granted to Isaiah Newell for improvements in water-coolers. The first patent, No. 895,781, was applied for July 22, 1902,

and issued August 11, 1908. The second patent, No. 895,782, was applied for September 26, 1903, and issued August 11, 1908.

The first patent is for a new type of water-cooler, and the second patent is for an improved form of this type.

The delay in the issuance of these patents was caused by interference proceedings, in which priority of invention was awarded to Newell. Rose v. Clifford, 31 App. D. C. 195, 197 (1903).

In the opinion in these interference proceedings, the Court of Appeals thus defines the invention:

"The invention here in issue relates to an improvement on water-coolers, having a receptacle for water within a chamber for ice, so arranged that the receptacle containing the water is surrounded with ice. The water is drawn from the receptacle by means of a pipe, to which a faucet is attached. The receptacle is supplied with water from a bottle filled with water, and inverted so that the mouth of the bottle extends through a funnel, in which the inverted bottle rests, into the receptacle. The water passes from the bottle into the receptacle until it rises to a level with the mouth of the bottle, when the liquid seals the mouth of the bottle. When water is drawn from the faucet, the water is lowered in the receptacle until the air is permitted to enter the mouth of the bottle, when the water again flows into the receptacle and so continues until it rises to the mouth of the bottle and seals it."

In Cole v. Cordley, 167 Fed. 542, 93 C. C. A. 220, the Circuit Court of Appeals for the Second Circuit, in referring to the water-cooler described in the first Newell patent, speaks of it as "Newell's fundamental invention," and it describes the Newell type of cooler as one in which a large glass bottle containing pure, potable water is inverted upon a receptacle containing ice, which surrounds a conduit for the water located in the receptacle. In this way the water is kept cool, and may be drawn off by a faucet, in which the conduit terminates, at the bottom of the receptacle. In short, the water, after being cooled, is delivered to the drinker direct from the bottle.

There is no doubt upon this record that Newell invented a new type of water-cooler, which has met a public want, and which has gone into extensive use.

While the problem which Newell undertook to solve was a comparatively simple one, the evidence shows that he only attained success after repeated efforts; and it further appears that, although the Newell structure described in his first patent is a simple one, a number of patents have been issued for improvements or modifications of that structure; the first of these improvements being embodied in the second Newell patent in suit.

In his first patent, No. 895,781, Newell describes his invention as follows:

"My invention relates to improvements in water-coolers, and pertains to a construction which is adapted for users of mineral and distilled waters, whereby the same can be used directly in the cooler from the original package, bottle, or demijohn; the construction being simple for enabling the bottle to be placed in position or removed, and for the purpose of inserting ice within the cooler.

"By the use of my invention, the users of mineral and distilled waters are enabled to use the water directly from the original package, and thus absolutely prevent any contamination of the water by coming in contact

with the ice, or becoming contaminated by disease germs in any manner whatsoever, which insures the user that he is receiving the mineral or distilled water in its original pure condition, and at a proper cool temperature for pleasant drinking."

The following drawing from the patent illustrates the Newell structure:

In describing this structure the specification says:

"Referring to the drawings, *1* is the main or body portion of the cooler, and in which the ice is placed. Located within the body portion is a water receiver, which extends upward to near the top thereof, and, as here shown, consists of either a diaphragm *2* as illustrated in Fig. 1, or a coil of pipe *8*. As here shown, the pipe *8* extends upward to near the top of the body portion *1*, and communicates with a receptacle *12*. The water from the original package, bottle, demijohn, or other vessel *4*, passes therefrom to the receptacle *12*, thence through the pipe *8* and to the coil or diaphragm, at the bottom of the body portion *1*.

"In the two forms of construction here shown for carrying out the invention, the cooled water is dispensed from either the coil pipe form *3*, or the diaphragm form *2*, through a pipe *5* which extends through the body portion *1* of the cooler, and carries a suitable faucet *6* at its outer end. The upper end of the pipe *8* is suitably supported at the inner side of the body portion, and is provided with a conically shaped opening *9*, constituted of block tin, which may or may not have an inner rubber lining.

"Removably placed in the upper end of the body portion, is a cover or bottle supporting member *10*, and this member has a centrally upwardly projecting flange *11*, forming a flange opening for the neck of the original package, bottle, or demijohn receptacle *4* and an outer upwardly-extending flange *11′*, which surrounds a portion of the bottle as shown. Placed immediately below the flange opening *11* is a receptacle *12*, and this receptacle *12* carries a pipe *14* having a tapered end *15*, fitting snugly and water-tight the tapered opening *9* at the upper end of the pipe *8*, but which is removable therefrom. The location of the receptacle *12* is such that the mouth of the bottle is inserted within the receptacle, as clearly shown in Figs. 1 and 2, and serves as an automatic feed for the water from the bottle or demijohn *4* as it is being drawn through the faucet *6*.

"A bottle protecting case *17* is removably placed over the upper end of the main or body portion *1* of the cooler, and forms a protection for the bottle, and as a finish to the cooler.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"By means of a cooler of this form, less ice is required, and, as before stated, contamination of the pure water absolutely prevented. There are no valves or siphon action in this device, and it is so simple that any one can use or operate it, and it enables the user to obtain water from the original package, which is an absolute assurance of obtaining the water in its original condition.

"The action of automatically cutting off the flow of water from the bottle *4* is well understood, and operates by the water in the funnel closing the mouth of the bottle, thus preventing the flow of air into the bottle, which

prevents the flow of water therefrom, and it may aptly be termed a pneumatic automatic cut-off."

It is apparent from this citation from the specification that, while the main features of the Newell structure are comparatively simple, the structure as a whole involved the combination of quite a large number of separate parts or elements.

Of the claims in issue, Nos. 12, 13, 14, and 15, it is sufficient to cite claim 12:

"A device for delivering and cooling bottled water, the same consisting in the combination of a cooling-chamber adapted to contain a cooling agent and provided with an opening in its upper part through which the neck of the inverted bottle passes, a water receptacle upon which said cooling agent acts to cool the contents thereof and provided with an opening into which the head or neck of the inverted bottle projects, a bottle placed with its open mouth extending through said openings in the cooling-chamber and said receptacle and projecting downwardly into said water-receptacle in position to be sealed by the water in said receptacle when said water rises therein to substantially the level of the mouth of the bottle to stop the flow therefrom and to be unsealed by said water when its level is lowered in said receptacle and thereby replenish the latter, and means for drawing water for use from said water-receptacle, whereby successive portions of the water in the bottle are automatically delivered to said water-receptacle and cooled therein, such delivery taking place at times determined by the drawing of water from said water-receptacle for use, substantially as and for the purpose set forth."

The second Newell patent, No. 895,782, is for an improved and more simple form of the same type of water-cooler as is described in his first patent. This water-cooler is illustrated in the following drawing from the patent:

In describing the important features of this structure the specification says:

"In carrying out my invention, I provide a suitable receptacle or body portion 1, which may be made of any suitable material. Located within this receptacle is a water-containing vessel 2. This vessel 2 is principally composed of glass, as being the best suited for the purpose, and the particular formation of this vessel is one of the essential features of my present invention. It will be observed that this vessel 2 is constructed with a lower and large portion 3, which preferably almost fills the bottom portion of the main vessel 1. Projecting from the enlarged portion 3 is an elongated neck 4, forming a passageway, and the upper end thereof is preferably about in the same horizontal plane as the top of the main vessel 1.

* * * * * * * * *

"The main vessel is provided with a cover 5, and this cover has a central opening provided with an upwardly-flaring flange or member 6, which projects above the top and preferably below the top, and into the mouth or upper end of the neck 4 of the auxiliary vessel, as clearly illustrated in Fig. 2. The flange 6 forms a support for the bottle 7 containing the pure water, and which is the original package. Placed within the main vessel 1, around the neck and upon the lower enlarged portion of the auxiliary vessel, is a suitable quantity of ice 8.

"A suitable faucet 9 passes through the main vessel 1 and is in communication with the enlarged portion 3 of the auxiliary vessel."

With respect to this patent, claims 1, 3, and 7 are in issue. Of these claims it is only necessary to cite the first:

"A cooler comprising a main vessel, an auxiliary vessel placed therein and of a smaller area than the main vessel to permit ice to be placed therearound, the auxiliary vessel extending to the upper portion of the main vessel and adapted to receive the mouth of the bottle, a support for the bottle arranged exterior in respect to the main vessel, and an outlet connection connected with the lower portion of the auxiliary vessel and passing through the main vessel."

The defendants' cooler is illustrated in the following drawing:

It is apparent, upon an examination of the defendants' cooler, that it is like the Newell cooler, with some immaterial changes in form. The main difference in form between the defendants' structure and the structure of the second Newell patent is that in the former the water receptacle projects above the top of the main vessel and forms the support upon which the bottle rests, whereas the Newell structure is provided with a cover having an upwardly extended flange, which forms the support for the bottle. This extension, however, of the defendants' receptacle, performs the same function as the Newell cover, and is therefore clearly an equivalent.

If we take the defendants' structure, and compare it with claim 12 of the first Newell patent and claim 1 of the second Newell patent, we find that it contains the combination of elements which form the subject-matter of these claims, or what is manifestly the equivalent of those elements; and the same may be said of claims 12, 13, and 15 of the first Newell patent and claims 3 and 7 of the second Newell patent.

Upon the question of infringement, therefore, we entertain no doubt.

The main defense to this suit which was argued before the court, and which is discussed in the briefs, is that the Newell patents are void for want of invention in view of the prior art. In support of this defense there are introduced in evidence numerous prior patents in the water-cooler art and in analogous arts.

While it is true that there is found in the prior art every element of the Newell cooler, yet it is equally true that the prior art fails to disclose any structure which contains the combination of elements which constitute the Newell cooler. The Newell patents describe a type of cooler which is not found in any prior patent or prior publication.

Under the circumstances, it would serve no useful purpose to review the prior art, and compare these old devices with the Newell cooler.

Upon the general question of the prior art as bearing on the question of invention, it is sufficient to say that Newell invented a new type of water-cooler, that prior efforts in this direction had proved unsatisfactory, that this new type of cooler met a public demand, and that it has gone into extensive public use.

In view of the evidence in the present record and the decision of the Court of Appeals in Rose v. Clifford, supra, it seems to me that the complainant has fixed the date of the Newell inventions at a time prior to the Rose invention, which was in interference in that case, and which is covered by his patent, No. 715,609, dated December 9, 1902.

With respect to the so-called Estes cooler, it is clear that the evidence is not sufficiently definite and certain to take this alleged anticipation out of the list of abandoned experiments.

Our conclusion is that the inventions covered by the Newell patents in suit are meritorious, that they represent an advance in the water-cooler art, in that they cover a new type of water-cooler, that they are not void for want of patentable novelty, in view of the prior art, and that the defendants' cooler infringes the claims in issue.

A decree may be entered for the complainant.